UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                Plaintiff,<br>    vs.<br><br>TRISTA FOX,<br><br>                Defendant. | 3:10-cr-041-HRH-JDR<br><br>**<u>INITIAL RECOMMENDATION REGARDING MOTION TO SUPPRESS</u>**<br><br>(Docket No. 19) |

        Defendant **Trista Fox** moves the court to suppress all the evidence seized December 4, 2009 pursuant to a traffic stop in Fairbanks, Alaska. Docket 19. The government filed an opposition at Docket 23. An evidentiary hearing on the motion was conducted by the magistrate judge. Officers Ron Dupee and Doug Welborn testified for the government and Trista Fox testified on her behalf. The defendant argues that the officers lacked articulable suspicion to hold her for a

prolonged period of time and she gave no consent for a warrantless search of her person, coat or her purse.

## Findings of Fact

On December 4, 2009, about 1:40 PM, Fairbanks Police Officer Ron Dupee assigned to the traffic unit made a traffic stop of a white Cadillac Escalade owned by defendant Trista Fox and being driven by John Fox. Officer Dupee's attention was drawn to the vehicle when he observed that it had dark tinted windows on the front driver and passenger side. He knew that in the State of Alaska any after-marketing tinting on the front driver or passenger side could be illegal. He also observed that the registration for the rear vehicle plate was showing expired. He conducted a search of the vehicle in APSIN (Alaska Public Safety Information Network) and confirmed that the plates were actually expired. He drove behind the vehicle and conducted a traffic stop as the vehicle turned into the Fred Meyer parking lot.

Officer Dupee collected the driver's license, vehicle registration and an expired insurance card, as well as, the driver's license for Ms. Fox because she stated that she was the owner of the vehicle. He noted that her last name was Robinson. Officer Dupee asked the driver and passenger about their relationship. They claimed that they were only friends. Trista's driver's license came back in APSIN as Trista Fox not Trista Robinson.

Mr. Fox's drivers license stated that he was from Anchorage although the vehicle was registered in Fairbanks to Ms. Robinson, who stated she was just a friend of Mr. Fox. The officer ran the identifications of the occupants of the Cadillac and learned that Mr. Fox was on federal probation for misconduct involving a controlled substance. Following standard police procedure he attempted to contact the probation officer through his dispatch. He learned that the probation officer was actually in Fairbanks to attend a court hearing.

About 30 minutes into the stop Officer Dupee was advised that the probation officer was actually on her way to the scene. While waiting for instructions from the U.S. Probation Officer he proceeded to issue two citations to Mr. Fox. One was for expired registration on the vehicle and the other for not having proof of insurance. He asked Mr. Fox to step out of the vehicle and he explained the citations to him and how he could go about having the correctable ticket for no insurance voided by bringing proof down to the police department or the city attorney's office.

Mr. Fox then returned to the vehicle. As he was getting into the vehicle Officer Rupe who had arrived at the scene informed Officer Dupee that the probation officer wanted the vehicle searched with a canine unit which was on its way. From the time that Officer Dupee received word that the probation officer was taking some action and actually arrived on the scene, about 15 minutes elapsed.

Officer Rupe and Officer Doug Welborn asked Ms. Fox for consent to search the vehicle and she consented. Welborn served as a back-up officer at the scene. When Officers Rupe and Welborn approached Ms. Fox on the passenger side she displayed what Officer Welborn characterized as very paranoid behavior. She appeared fidgety and frequently looked around a lot. At this time Mr. Fox had been placed in a patrol car.

After the probation officer and canine unit arrived the probation officer talked to Mr. Fox in the back of a patrol car. Sgt. Johnson walked canine Marley around the exterior of the vehicle for a dog sniff.

Officer Dupee explained in his testimony that there were tactical and safety reasons for maintaining control of the passenger during the police stop even though his focus was on the driver. The driver was a probationer who had repeatedly been involved in drug dealings. The officer knew that a passenger could be implicated in criminal activity on the part of the driver or be motivated to assist him in some way.

Canine Marley gave a positive alert on the passenger door where Ms. Fox was seated. At that point Officer Dupee seized the entire vehicle and its contents pending application for a search warrant. Officer Dupee advised Ms. Fox that he was seizing the vehicle pending a search warrant. Ms. Fox was asked to exit the vehicle. She had her coat in her hand and Officer Dupee told her that the coat

needed to remain in the vehicle with the contents of the vehicle unless it was searched prior to her taking it. The thick winter coat was a Northface jacket. It was about 10 degrees outside although the engine of the Cadillac had been running keeping it warm inside the vehicle. In response to the officer's statement Ms. Fox indicated that she wanted to take the coat with her and gave the coat to Officer Dupee allowing him to search it. Both Officers Dupee and Welborn testified that Ms. Fox requested to take the jacket with her. The search of the vehicle at the scene lasted about ten minutes.

The officer proceeded to search the coat and found six and one half suspected ecstacy tablets and about $855 dollars in cash. Ms. Fox was detained pending the tablets being tested for the presumptive presence of drugs. Once the tablets tested positive at the Fairbanks Police Department Ms. Fox was placed under arrest.

Trista Fox was not allowed to leave the scene of the traffic stop during this encounter nor did she ask to leave. While the officer held Trista's coat the federal probation officer patted her down.

I reject Trista Fox's testimony that her coat was searched without her consent. She testified that when the officer asked to "search her purse and her coat" she responded: "No, that's my right."[1] Under the facts the magistrate judge

---

[1] See Transcript of Proceedings Evidentiary Hearing, Docket 44, pp. 69, 72.

concludes that an officer did not ask to search her purse at the same time as requesting to search her coat. According to Officer Welborn if she had been wearing her coat when she was asked to step out she would have been subjected to a pat search immediately. When Trista Fox was asked for permission to search the purse she did say "no" and the purse was not searched until after the search warrant was issued. I reject Trista Fox's testimony that Officer Dupee asked her to take off the coat for a pat down search. Ms. Fox testified that she did not recall ever being asked to consent to a search of the coat.

## Application of Law

### I. Standing

Trista Fox has standing to challenge the constitutionality of the stop. When police make a traffic stop, the passenger is seized for Fourth Amendment purposes and may challenge the constitutionally of the stop. Brendlin v. California, 551 U.S. 249, 127 S. Ct. 2400 (2009). A reasonable person in the circumstances of this stop would have believed she was not free to leave without police permission when the officer by a show of authority stopped the vehicle and exercised control over the encounter.

### II. Validity of Traffic Stop

Trista Fox does not challenge the initial seizure of John Fox when the officer made the traffic stop. Fairbanks Police Officer (FPO) Ron Dupee observed

the white Cadillac Escalade during a routine patrol. The car had dark tinted windows and the check of the license plate revealed that it was expired. The stop was based on probable cause and was thus lawful.

During a traffic stop an officer can lawfully request to see a driver's license, insurance papers and vehicle registration. The officer may also run a computer check and issue a citation. United States v. Santiago, 310 F.3d 336, 341 (5th Cir. 2002). FPO Dupee was permitted to detain the driver and his passenger and question the occupant on subjects relating to the traffic stop during the time the computer check was being conducted. *Id.*

The defendant does not challenge the duration of the detention of the driver in order for his probation officer and the drug detecting dog to arrive at the scene. Given the legality of the extended detention of the driver, the question becomes when and whether the passenger should have been told she had a constitutional right to depart before being further detained and eventually arrested. The facts in Santiago, supra, are factually distinguishable because in that case there was no factor supporting an extended seizure. It is clear that "[a] seizure that is lawful at its inception can violation the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." Illinois v. Caballes, 543 U.S. 405, 407 (2005) citing United States v. Jacobsen, 466 U.S. 109, 124 (1984).

//

### III. Lawfulness of Extended Traffic Stop

Usually, when a car is pulled over for a traffic stop an occupant of the vehicle would not reasonably perceive that the show of authority was directed at her. After the officer's focus shifted from a moving traffic violation to scrutiny of the driver as a probationer it is understandable that the passenger, Trista Fox, would feel subject to initial suspicion owing to her close association with the driver. She had initially given the officer a different name rather than disclosing that she was the driver's spouse.

It was reasonable for the officer to make inquiry of Trista Fox's relationship to the probationer during the encounter after the officer had determined that the driver was on probation. It was reasonable for the officer at the scene of the investigation to not let the passenger move around freely in ways that could jeopardize his safety or the safety of other officers present. *See* <u>Maryland v. Wilson</u>, 519 U.S. 408 (1997).

A reasonable passenger should understand that she is subject to the police display of authority when police stop a vehicle. Fox submitted to this authority when she remained inside the vehicle after the car had come to a stop. Once the police legally stopped the vehicle in which Fox was riding her personal liberty was

altered necessarily as a practical matter. The additional intrusion upon her was minimal under the circumstances.

Under <u>Maryland v. Wilson</u>, <u>supra</u>, an officer making a traffic stop may order a passenger to get out of the vehicle pending completion of the stop. The passenger has no Fourth Amendment right not to be ordered from the vehicle once a proper stop is made. The Supreme Court has consistently emphasized that the touchstone of the Fourth Amendment analysis is the reasonableness of the particular governmental invasion of a citizen's personal security. <u>Terry v. Ohio</u>, 392 U.S. 1, 19 (1968); <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 108-109 (1977). What is reasonable depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference from law officers. <u>Mimms</u>, <u>supra</u> at 109; <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 878 (1975).

Once outside the vehicle the passenger would not have access to any possible weapon that might be concealed in the interior of the passenger compartment of the vehicle. Officers may reasonably deter the motivation of a passenger to employ violence directed at preventing apprehension of a crime or the driver. <u>Maryland v. Wilson</u>, <u>supra</u> at 414. For this to occur no special danger to the police need be shown. *Id.*

Here, the circumstances were different from the usual traffic stop and justified detaining both occupants of the vehicle while the officer investigated his

10-cr-041-HRH-JDR FOX @19 RR Re Mtn to Suppress.wpd                                      9

Case 3:10-cr-00041-HRH   Document 45   Filed 07/13/10   Page 9 of 18

suspicions that the driver may have violated supervisory conditions of probation. It was the policy and practice of the Fairbanks Police to contact a probationer's probation officer when the officer determined that the person probably committed a violation of law in his presence including a moving traffic offence.

The facts of this case support the delay of the driver to allow Officer Dupee to contact his police dispatcher, his consequent contact with John Fox's federal probation officer, and the request for and arrival of the canine to engage in a dog sniff of the vehicle. These facts support a conclusion that the duration of the extended traffic stop was justified in this case. It took about 30 minutes for the officer to check the drivers licenses, contact dispatch, write citations, explain to the driver that one of the tickets was voidable, and receive a response from the probation officer that she wanted to talk to the probationer and subject the vehicle to a canine search for drugs.

The positive alert of the drug detecting canine on the passenger side of the vehicle provided reasonable suspicion to detain Trista Fox and further explore the matter. The alert of the canine converted the lawful traffic stop and investigation of the driver into a drug investigation. This shift in purpose also supported reasonable suspicion that any item that had been in the vehicle while the dog sniff occurred could contain illicit drugs. The dog sniff itself did not violate any of the

defendant's constitutionally protected interests in privacy. Any interest in possessing contraband cannot be deemed legitimate.

The police conduct in seeking to search the defendant's coat or purse after the dog alert was reasonable and compromised no legitimate expectation of privacy interests belonging to Trista Fox. This was particularly so since the initial search of the vehicle itself at the scene did not disclose the presence of any drugs or reveal the reason for the dog alert. Thus, it was reasonable to suspect that drugs could have been contained in or on the passenger. As explained in Caballes, supra, the exception that "certain facts will not come to the attention of the authorities" is different than the interests in privacy that society is prepared to consider reasonable. *See* United States v. Jacobson, supra at 122, as quoted in Caballes, supra, at 409.[2]

The officer's request that Trista Fox either consent to a search of her coat or leave it in the vehicle (to await application for a search warrant) was reasonable based on the dog alert to the passenger side of the vehicle and the driver being on probation for a drug offense. The dog sniff was performed on the exterior of the defendant's vehicle which had been driven by her husband who was lawfully seized. The police officer's response to the driving offenses and his

---

[2] A state judicial officer subsequently found that the dog sniff and facts surrounding the traffic stop were sufficiently reliable to establish probable cause to conduct a full-blown search of the vehicle.

legitimate inquiry of a probationer were reasonable under the totality of the circumstances.

There is no evidence that Trista Fox sought permission to leave the scene before the dog alert event occurred. The officers did not seek to detain Trista Fox indefinitely but only until the probable cause provided by the dog alert could be reasonably addressed. The defendant does not challenge the legitimacy of the dog sniff of the vehicle. Rather, she argues that her detention took too long and vitiated her initial seizure as a passenger, i.e., that the manner of execution of her seizure unlawfully infringed on her privacy interests protected by the Constitution.

The detention of both the driver and passenger until the driver's probation officer and the trained canine could arrive was reasonably related in scope to the circumstances which justified the extended stop, namely the moving traffic violations by the driver. Although the defendant was not free to leave while the officers waited a reasonable time for the trained canine to arrive, this delay was the least intrusive means available in a short period of time to verify or dispel the officer's reasonable suspicion that drugs could have been contained on her person or in her clothing.

Because officers had acquired probable cause to search the Cadillac, they could conduct a warrantless search of any container found inside the vehicle that may conceal the object of the search, namely the drugs based on the positive

alert of the canine. United States v. Johns, 469 U.S. 478 (1985). "[A]n individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." Untied States v. Ross, 456 U.S. 798, 825 (1982). "The justification to conduct a warrantless search does not vanish once the car has been immobilized." Michigan v. Thomas, 458 U.S. 259, 261 (1982)(per curiam). Thus, the decision to impound the vehicle does not remove the justification to search anything in the vehicle which might contain drugs.

Case law supports the officer's decision to require Trista Fox either to consent to a search of her coat if she wanted to remove it from the vehicle pending application for a search warrant, or leave it in the vehicle thus preserving the status quo. Exposure of the coat to an immediate search was not based on the right to conduct a warrantless search under the driver's conditions of probation, but rather on the lawful dog alert on the passenger side of the vehicle while the defendant was a passenger therein. The scope of the search is not defined by the nature of the object contained inside the vehicle; rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Johns, supra, at 485-86.

### IV. Validity of Consent to Search Coat

A warrantless search pursuant to a valid consent is constitutionally permissible. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1972). The defendant

contends that she did not voluntarily consent to a search of her coat. The first question, then, is whether she factually consented to a search. If so, then the court must analyze the facts to determine if the consent was voluntary.

This two-pronged inquiry is used to determine whether a consent to search complies with the Fourth Amendment. First, this court must determine whether the consent was voluntarily given, and second whether it was an independent act of free will. *See* for example, United States v. Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir. 1993). As stated in the findings of fact, supra, the magistrate judge concludes that Trista Fox did consent to the contemporaneous search of her coat. The purse was searched after her lawful arrest, not pursuant to consent.

After the canine search Ms. Fox was told to get out of the car because it was being impounded for a search warrant. She was told that everything needed to be left in the vehicle. She had her coat in her hand. Officer Dupee told her that if she wanted to bring her coat with her it had to be searched prior to leaving the vehicle.

In the instant case, Trista Fox's consent to search the coat was in fact voluntarily given by her. In response to Officer Dupee's explanation that the coat would either have to remain in the vehicle or be subjected to a search if she were to take it with her she handed the coat to the officer. In order to be valid, a consent does not have to be expressed in any particular verbiage. Conduct in response to

a question may constitute a valid implied consent.  Here, there was no coercion on the part of the officers or any implied threat.

Considering both the characteristics of Ms. Fox and the circumstances of the inquiry regarding consent to search, the magistrate judge concludes that her consent was voluntary.  She was detained but not under arrest.  Ms. Fox is a person of at least average intelligence.  She was not under the influence of any drugs or alcohol and was not threatened in any way in order to consent.  The voluntariness of the consent does not turn on the presence or absence of a single controlling criterion.  <u>Bustamonte</u>, 412 U.S. at 226.

In <u>Bustamounte</u>, a policeman, during a traffic stop, asked the owner of the vehicle if he could search the car.  The passenger replied, "[s]ure, go ahead."  The high court found the search and seizure constitutionally valid.  In its ruling the court held that while knowledge of the right to refuse to consent is a factor to be taken into account, the prosecution need not prove that the one giving permission to search knew that he had a right to withhold his consent.  Although a detention that is plainly illegal vitiates consent, such is not the case here.

Trista Fox's response to Officer Dupee's statement about the removal of the coat was not a mere submission to authority.  Ms. Fox had sufficient knowledge to provide an informed response to the choice of either leaving the coat in the car or taking it with her.  The choice provided Ms. Fox was justified as the

officers had the right to retain objects within the vehicle during its lawful impoundment while awaiting a prompt application for a search warrant. She was not unlawfully detained when the consent issue arose. The officer had a right to prevent any evidence of drugs in the coat from being destroyed. The magistrate judge concludes that the consent was not obtained during any unlawful detention.

This case is distinguishable from facts where a movable object is carried in an automobile and the object is not believed to be carrying contraband. Police with probable cause to search a vehicle may inspect a passenger's belongings found in that vehicle that are capable of concealing the object of the search. Wyoming v. Houghton, 526 U.S. 295 (1999). A passenger possesses a reduced expectation of privacy with regard to the property she transports in a motor vehicle. *Id.* Here, the governmental interest in effective law enforcement would be significantly impaired without the ability to search the passenger's belongings considering the ready mobility of the vehicle and the passenger should she be allowed to walk away. Houghton recognized that a passenger may have an interest in concealing evidence and wrong doing in a common enterprise with a driver. Similarly, an offender might be able to hide contraband in a passenger's belongings or elsewhere in a vehicle.

Once the defendant made the choice to retain possession of her coat rather than leave it in the vehicle it was reasonable for the officers to detain her at

the scene. She was frisked by the female probation officer and her coat searched pursuant to her consent. Her detention during the prolonged traffic stop did not require the officers to have probable cause to arrest her.

### Summary

The detention of the defendant for more than one hour awaiting the canine alert during the extended traffic stop was lawful. The search of her coat was lawful pursuant to her valid consent. There was no illegal seizure of evidence or violation of the defendant's Fourth Amendment rights to taint the search warrant application for the defendant's vehicle. The defendant's purse was not searched until after she had been lawfully arrested.

The defendant was properly seized by the police as a passenger for the duration of the traffic stop including the probationary search of her husband (driver) and the dog sniff conducted on the vehicle. The magistrate judge conclude that the delay of the defendant during the completion of the vehicle search was reasonable although it had an adverse affect on her privacy or possessory interests. **Accordingly, the motion to suppress should be denied. IT IS SO RECOMMENDED.**

DATED this 13th day of July, 2010, at Anchorage, Alaska.

      /s/ John D. Roberts
      JOHN D. ROBERTS
      United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON on Thursday, July 15, 2010. Parties' Objections to be routed directly to the Hon. H. Russel Holland**. The failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. **No Response(s) to the objections shall be filed without further order of the court.**

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).

10-cr-041-HRH-JDR FOX @19 RR Re Mtn to Suppress.wpd

18

Case 3:10-cr-00041-HRH   Document 45   Filed 07/13/10   Page 18 of 18